UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ELIJAH A.,[1]

        Plaintiff,

    v.                                                        24-CV-1008-LJV
                                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

On October 21, 2024, the plaintiff, Elijah A. ("Elijah"), brought this action under

the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On January 24, 2025, Elijah moved for judgment on the pleadings,

Docket Item 8; on March 24, 2025, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 14; and on April 4, 2025, Elijah replied, Docket

Item 15.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Elijah applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Elijah's motion and grants the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.    THE ALJ'S DECISION**

On June 25, 2024, the ALJ found that Elijah had not been under a disability since November 5, 2019, the date his application was filed. *See* Docket Item 5 at 35. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 25–26.

At step one, the ALJ found that Elijah had engaged in substantial gainful activity in the second half of 2023 and the first quarter of 2024. *Id.* at 26. But the ALJ also found that there were "continuous 12-month period(s) during which [Elijah] did not engage in substantial gainful activity," and the ALJ's decision addressed those periods. *Id.* At step two, the ALJ found that Elijah suffered from four severe, medically determinable impairments: "status post traumatic brain injury, loss of left eye visual acuity due to macular scar, headaches, and history of asthma." *Id.*

At step three, the ALJ found that Elijah's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 28. More specifically, the ALJ found that Elijah's impairments did not meet or medically equal listing 2.02 (loss of central visual

3

acuity), 2.03 (contraction of the visual field in the better eye), 2.04 (loss of visual

efficiency, or visual impairment, in the better eye), 3.03 (asthma), or 11.00 (neurological

disorders).  *Id.* at 28–29.

The ALJ then found that Elijah had the residual functional capacity ("RFC")[4] to

"perform work a full range of work at all exertional levels" except that:

> [Elijah] is unable to climb ladders, ropes, or scaffolds; he must avoid
> all exposure to unprotected height[s], dangerous machinery, and
> moving mechanical parts; he must avoid exposure to toxic
> chemicals, such as [those] used in manufacturing; he is unable to
> work in extreme cold or extreme heat; he is unable to work under
> direct sunlight or bright fluorescent lighting; he is unable to work in
> dark work situations or outside at night without lighting; he can
> frequently read normal size[d] print; he can occasionally read small
> print; he can constantly engage in depth perception activities
> required to judge the distances and spatial relationships to hand[le]
> and finger objects large[r] than 1/4 inch in diameter; he can never
> handle or finger objects 1/4 inch in diameter or smaller including, but
> not limited to, work as a jeweler; he can engage in constant
> accommodation tasks for work that does not require excellent visual
> acuity, such as for occupations as [a] photo retoucher or jeweler; he
> can constantly engage in tasks that require clarity of vision at 20
> inches or less, such as reading of normal size print, occasionally
> reading small print, and constantly handling objects larger than 1/4
> inch in diameter; he will be off[ ]task 5% of the workday; and he will
> have 8 unexpected absences per year.

*Id.* at 29.

At step four, the ALJ found that Elijah could perform past relevant work as a

companion.  *Id.* at 33–34; *see Dictionary of Occupational Titles* ("DOT") 309.677-010,

1991 WL 672667 (Jan. 1, 2016).  The ALJ nonetheless continued to step five and

---

[4] A claimant's RFC is the most "an individual can still do despite his or her
limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-
8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v.
Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

found, based on Elijah's age, education, and RFC, that Elijah could perform substantial

gainful activity as a marker, hand packer, or hand launderer.  Docket Item 5 at 34–35;

*see DOT* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 920.587-018, 1991 WL

687916 (Jan. 1, 2016); *id.* at 361.684-010, 1991 WL 672982 (Jan. 1, 2016).  The ALJ

therefore found that Elijah had not been under a disability since the date his application

was filed.  *See* Docket Item 5 at 35.

## II.    ALLEGATIONS

Elijah raises one argument: that the ALJ's RFC finding was not supported by

substantial evidence.  *See* Docket Item 8-1 at 13–20.  More specifically, Elijah says that

the ALJ's highly specific RFC finding that Elijah would be "off[ ]task 5% of the workday"

and that he would have "8 unexpected absences per year" was error because it was not

tethered to evidence in the record.  *Id.* at 13–14.  For the reasons that follow, this Court

disagrees.

## III.   ANALYSIS

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that

limitation cannot come from whole cloth.  *See Tomicki v. Berryhill*, 2018 WL 703118, at

*5 (W.D.N.Y. Jan. 11, 2018).  In other words, when a medical provider opines about a

specific limitation, an ALJ cannot arrive at some less-restrictive specific limitation unless

that lesser limitation is supported by the medical record.  *See Balsamo v. Chater*, 142

F.3d 75, 81 (2d Cir. 1998).  Therefore, when a provider finds that a claimant will be off

task for up to a specific amount of time and the record provides no support for some

lesser off-task time, a specific finding of some lesser time is not supported by

substantial evidence.  *See Tomicki*, 2018 WL 703118, at *5 ("[T]he record does not

support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option. . . . Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

When no medical provider opines about a specific limitation, however, an ALJ does not err by giving a claimant "the benefit of the doubt" and crafting a specific limitation.  *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("The fact that the ALJ afforded [the p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").  In other words, when medical experts opine that a claimant has no limitation, an ALJ does not err by finding some limitation—even a highly specific one.  Doing that gives the claimant the benefit of the doubt and a more-restrictive RFC than the expert opinions require. And that was precisely what happened here.

Here, Susan Dantoni, M.D., "a consultative examiner," opined that Elijah "may experience significant schedule interruptions . . . due to his severe headaches, nausea[,] and vomiting."[5]  *See* Docket Item 5 at 723–24.  But other providers disagreed. For example, Stephen Farmer, Psy.D., found that Elijah had only mild limitations in "sustaining concentration" and "sustaining an ordinary routine and regular attendance,"

---

[5] The ALJ was "unpersuaded" by this opinion, which was the third opinion that Dr. Dantoni provided.  *See* Docket Item 5 at 32.  The ALJ explained that "it [wa]s entirely inconsistent with medical records showing that [Elijah's] migraine headaches remain controlled with prescription medication, as well as [his] own statements to treating sources that he experiences, by his own estimation, one to four headaches per month and has gone as much as five months without headaches." *Id.*  And this Court has no reason to reject that assessment, which was well within the province of the ALJ.

Docket Item 3 at 604–05, and Christine Ransom, Ph.D., opined that Elijah had no limitations in "sustaining concentration" and "sustaining an ordinary routine and regular attendance," Docket Item 5 at 718–19.  And more important, no provider found that Elijah's impairments would cause him to be off task for any specific amount of time or to miss a fixed number of workdays a year.

Nevertheless, the ALJ found that Elijah's "experience of migraine headaches and history of asthma warrant[ed] . . . modest off-task and expected[-]absence limitations." *Id.* at 33.  And the RFC reflected that finding, including the limitation that Elijah would be "off[ ]task 5% of the workday[] and [] will have 8 unexpected absences per year." *Id.* at 29.  Certainly, the ALJ did not prejudice Elijah by crediting his complaints, giving him the benefit of the doubt, and finding a more restrictive RFC than any medical or psychological professional found.  *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease* [a claimant's] RFC based on other evidence in the record" was not error (emphasis in original)); *Shauna N.B. v. Comm'r of Soc. Sec.*, 2025 WL 961466, at *5 (W.D.N.Y. Mar. 31, 2025) ("[T]he ALJ's decision to impose more severe limitations than the [medical professionals] found . . . is not a basis for remand."); *Kiera D. v. Comm'r of Soc. Sec.*, 2024 WL 5116739, at *4 (W.D.N.Y. Dec. 16, 2024) ("While the ALJ assessed somewhat greater limitations than Dr. Ransom (based on the ALJ's review of the entire record), this was proper.").  Quite the opposite, that was to Elijah's benefit and was not error.

Elijah argues that the ALJ's reason for including a five percent off-task limitation, rather than some greater limitation, was that a greater time off task would result in a

finding of disability.  *See* Docket Item 8-1 at 17–18.  But because no provider opined about any specific time off task, the ALJ could have found that Elijah would not need any off-task time.  And that was especially so in light of Dr. Ransom's opinion that Elijah had no limitations whatsoever in that area.  *See* Docket Item 5 at 718; *Lesanti*, 436 F. Supp. 3d at 649.  Indeed, by including the five percent off-task limitation, the ALJ increased her own burden, as she had to ask the vocational expert whether an individual with that limitation could perform Elijah's past relevant work.  *See* Docket Item 5 at 112–14.

Elijah also suggests that remand is warranted because it was "unclear how the ALJ reached the specific findings in [the] RFC."  Docket Item 8-1 at 15–16.  But on the contrary, the ALJ indeed explained her reasoning: "[Elijah's] experience of migraine headaches and history of asthma warrant the . . . modest off-task and expected[-]absence limitations."  Docket Item 5 at 33.  More specifically, the ALJ explained that "in countenancing [Elijah's] estimation that he experiences headaches one to four times a month (but can go months without experiencing any headaches), I find that he will be off[ ]task 5% of the workday and will have 8 unscheduled absences each year."  *Id.* at 31.  And that explanation allows this Court to "glean the rationale" of the ALJ's decision. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

In sum, the ALJ's RFC finding was consistent with, or more restrictive than, at least some of the opinion evidence in the record.  That was not error.  *See Lesanti*, 436 F. Supp. 3d at 649.  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*

8

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence.  This Court will not second-guess it.

### CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Elijah's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 14, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:        March 16, 2026
              Buffalo, New York

/s/ Lawrence J. Vilardo
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE